**Sharon A. MOORE, et al., Plaintiffs,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, Defendant.**

Civ. A. No. 80–3067.

United States District Court,
District of Columbia.

Oct. 17, 1983.

Elizabeth L. Newman, Ambler & Newman, David N. Webster, David B. Wilkins, Nussbaum, Owen & Webster, Joseph M. Sellers, Washington Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for plaintiffs.

Richard T. Sampson, Scott L. Sherman, Semmes, Bowen & Semmes, Andrew McR. Barnes, Jean McNeill, National Association of Securities Dealers, Inc., Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

In December, 1980, Plaintiff Ms. Sharon A. Moore, a black female, filed an employment discrimination suit against the National Association of Securities Dealers (NASD), a self-regulatory body for federal and state securities laws. At the time of filing, she was no longer employed by the NASD. She started with NASD in November, 1978, and left the defendant's employment in February, 1980. Her complaint alleged violations of the Equal Pay Act, 29 U.S.C. § 206(d) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Title VII count alleged sex and race discrimination in recruitment, selection, training, evaluation, promotion, and work assignments. The complaint sought declaratory, injunctive and monetary relief for the plaintiff and a class of all past, present and future employees of and applicants for employment with NASD. The sex discrimination claims were later abandoned.

On August 31, 1981, an order was entered certifying a class of all past, present and future black employees of the NASD. Plaintiff's request to include unsuccessful applicants within the class or certify a separate class of women was denied out of a concern that the presence of these groups could create conflicts of interest. After additional discovery, the Court redefined the class, in October 1982, to include all past, present and future black employees of the NASD who have been engaged in surveillance of over-the-counter securities markets.

Following rounds of discovery and extensive pretrial proceedings, and on the eve of the scheduled trial on the merits, the parties represented at a status call on May 23, 1983, that a settlement had been reached. At that hearing, counsel for the plaintiffs represented that a total settlement had been reached. The settlement included a pending appeal denying a motion to amend the complaint, the withdrawal of all pending motions, and "a walk-away from any petitions for fees or expenses, a total give up of all of that, and in return we get ... affirmative relief provided for in a consent decree which we would jointly urge [the Court] to sign ... after a hearing calling for affirmative relief over a period of five years ...."[1]

Plaintiffs' counsel represented in a subsequent pleading[2] that the terms of the proposed settlement constituted a fair resolution of the claims advanced by members of the class and that it did not provide for immediate monetary relief to Sharon Moore and the class. Pretrial discovery revealed that while disparities existed between salaries paid to black and white employees, they were neither uniform nor marked, and that any potential award of back pay would have been problematical at best and would have paled in comparison with the importance of the affirmative relief to the members of the class. Counsel further represented that the most important objective was to establish policies and procedures that ensure that members of the class have a fair opportunity in the future for upward mobility within the NASD.[3]

In that same pleading, Ms. Moore's counsel represented that she undertook and assumed an obligation to promote and advance the interests of the class before any personal concerns, including a responsibility as guarantor of the costs of the litigation. She receives no personal financial benefits from the settlement, and in fact, is left

---

1. Transcript of May 23, 1983, p. 14 (lines 4–16).

2. Plaintiffs' Memorandum In Support Of The Proposed Consent Decree, pp. 2–3, filed May 26, 1983.

3. *Id.,* pps. 2–3.

with a liability for litigation expenses, including transcript costs, expert witnesses, and computer time. However, those expenses are specifically waived by the agreement and counsel for the class representative agreed to accept whatever the defendant will offer her.[4]

In the same memorandum, at page 10, plaintiffs' counsel represented:

[Ms. Moore] faced with the conflict of having been offered what she regards as significant affirmative relief for the class that she represents, some of which could not ever have been obtained after a fully successful trial on the merits, decided that consistent with her responsibility as a representative of the class, she could not place her own economic interest before the interest of the class. The problem was clear and the choice equally clear. She had to forego the claim for reimbursement of expenses and accept the economic burden that her position as class representative placed on her. Consequently, with full knowledge of the burden, she authorized the signing of the letter of May 11, 1983 attached as Exhibit B.[5]

At a May 27, 1983, settlement conference, before any notice to the class and before the formal consideration of the proposed Consent Decree, Ms. Moore represented in open court that she was aware of and in full accord with the provisions addressing both attorney fees and litigation costs. At the time this Court expressed and continued to express concern that the agreement did not provide for payment of the fees and costs incurred by the plaintiff in pursuing this litigation. Ms. Moore, however, expressed confidence in her attorneys,[6] as well as full knowledge of and satisfaction with the terms of the agreement negotiated by them.

On July 18, 1983, after notice to the class, a hearing was held to consider comments and reactions to the proposed settlement. Twenty-five of the 28 identifiable class members received notice of the hearings. Plaintiff Moore and later a class member, James Pennington, were present. Prior to July 18, Ms. Moore and several class members filed petitions expressing concern about the proposed Consent Decree in four areas: the provisions concerning attorneys' fees and costs; the possibility of future retaliation against class members; the question of equal pay for class members; and the means of monitoring the proposed agreement. They supported and concurred in the settlement in all other respects.[7]

At the July 18 hearing, Ms. Moore also voiced a different position, and the Court for the first time became aware that she had paid her first counsel, from personal funds, nearly $3,200 for fees and costs. Those disbursements were not recoverable under the proposed settlement. The other class plaintiffs had not advanced any monies to underwrite this proceeding, nor were they obligated to make any payments.

On July 13, 1983, counsel for the NASD responded to the four specific areas of concern noted by the plaintiff and other members of the class. At the July 18 hearing the settlement was approved, but only in principle. Both counsel were requested to file further submissions on the question of attorneys' fees and costs, and to appear in Chambers for further discussion on July 22, 1983.

Since then, the Court has had the opportunity to review all memoranda filed by counsel, the several transcripts of proceedings relative to the settlement and the controlling case authority. After weighing and considering all relevant factors, including the concerns noted in the several class

---

4. *Id.*, p. 9.

5. The letter, at page two, states:
   "... we will take in full discharge of any claim for fees and expenses anything that your client is willing to give, and that would include nothing, if that is your position."

6. At this time and since August 1982, the plaintiffs' lead attorneys were members of the Washington Lawyers' Committee for Civil Rights Under Law, an organization with a well-earned reputation in litigation of this nature.

7. Court docket entries of July 12, 1983.

**1222**

member petitions, the Court concludes that the proposed settlement is fair and reasonable in all respects.

As to Ms. Moore, who acknowledged that she understood and knowingly accepted and agreed with the efforts and results accomplished by her counsel, she cannot now be allowed to change her position. It is true that this Court expressed concern over the absence of any provision for attorneys' fees and costs. On the other hand, Ms. Moore knew that she had paid fees to her first group of counsel, when on May 27, she represented that she agreed with the proposed settlement. The plaintiff is not an inexperienced or uneducated litigant. She has earned an undergraduate degree and a graduate degree in business administration from two highly rated educational institutions.

This Court recognizes that it may refuse to accept and approve a settlement which is unfair, questionable in substance and merit or which shocks the conscience. Such is not the case here. And while at one time it had reservations and doubts about the manner in which counsel fees and costs were handled, a careful review of the course of this litigation, including the current settlement efforts, leads to a different result and the present conclusion.

In *United States v. Armour & Company*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), Justice Marshall, in delivering the opinion of the Court noted:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation....

The Consent Decree is approved and an appropriate order will be entered.