Sharon A. MOORE, Appellant

v.

NATIONAL ASSOCIATION OF
SECURITIES DEALERS, INC.

No. 83–2213.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 24, 1984.

Decided June 4, 1985.

As Amended June 10 and
June 19, 1985.

Paul March Smith, Washington, D.C., with whom Joseph N. Onek, Washington, D.C., was on the brief, for appellant.

Anthony W. Kraus, Baltimore, Md., with whom Richard T. Sampson, Baltimore, Md., and Andrew McR. Barnes, Washington, D.C., were on the brief, for appellee. Scott L. Sherman, Baltimore, Md., also entered an appearance for appellee.

Robert E. Williams and Douglas S. McDowell, Washington, D.C., were on the brief for amicus curiae, Equal Employment Advisory Council, urging affirmance.

Charles Stephen Ralston, New York City, was on the brief for amicus curiae, NAACP Legal Defense and Educ. Fund, Inc., urging reversal.

Before WRIGHT and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion filed by Senior Circuit Judge MacKINNON.

Opinion concurring in the judgment filed by Circuit Judge WALD.

Dissenting opinion filed by Circuit Judge WRIGHT.

MacKINNON, Senior Circuit Judge:

Sharon Moore brought a Title VII class action suit that was settled prior to trial pursuant to a consent decree entered by the district court. In the settlement process Moore and her counsel waived all claims for attorneys' fees and costs otherwise available under section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). After Moore's agreement to the settlement as class representative but prior to a fairness hearing as to class members, Moore changed her position and requested that the court separately modify the settlement to include attorneys' fees and costs. The district court rejected Moore's proposal and affirmed the settlement. This case presents the narrow question of whether the fee-shifting provision of Title VII prohibits a *plaintiff* from voluntarily offering to waive attorneys' fees and costs during simultaneous negotiations of merits, fees, and costs. We hold that in this case simultaneous negotiations are permissible, and that a *plaintiff* may *voluntarily* waive attorneys' fees and costs if done so without a demand by the defendant. On the merits, because we believe that the district court did not abuse its discretion, we affirm.

I. BACKGROUND

Appellant Sharon A. Moore was a black employee of appellee National Association of Securities Dealers ("NASD") from November 1978 to February 1980. On December 1, 1980, she initiated this class action against NASD, alleging discrimination against blacks and females in recruitment, selection, training, evaluation, promotion, and work assignments in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d). Moore sought declaratory, injunctive, and monetary relief. The district court certified the class as to black employees but permitted Moore to pursue her sex discrimination claim on her own. After partial discovery, the class was further narrowed to include only those black employees employed by NASD as officers, managers, or professional market analysts since February 1979. The sex discrimination claims were later abandoned.

The parties engaged in discovery on the merits from mid-October, 1982 until mid-March, 1983. In the course of discovery, Moore inspected over four hundred personnel files of current and former black and

white employees of NASD, thousands of pages of NASD salary administration and personnel documents, and applicant flow information relating to the interviewing, hiring, and promotion of NASD employees. Moore also deposed middle- and upper-level managers of NASD.

On April 4, 1983, Moore's counsel sent to NASD an offer of settlement. The proposal included prospective relief, made no provision for back pay, and left the question of attorneys' fees and costs to be decided after approval of the merits settlement (Joint Appendix (J.A.) 76–80). NASD rejected this offer. Moore's counsel then offered to accept the same merits relief and file a petition with the court with a cap of $100,000 on fees and expenses. NASD believed "that fees and expenses created a problem" (J.A. 81). (Moore's counsel estimated costs of about $30,000 and fees in excess of $200,000.) *Id.* NASD rejected this offer. Moore's counsel next offered to accept the affirmative relief plus expenses and $50,000 for fees. Again, NASD refused. Finally, Moore's attorney wrote to NASD's counsel:

Having considered the matter overnight and not wishing to deprive my clients of the relief you are willing to give by considering the question of fees and expenses, I offer to you the following proposal:

Your client grants the relief requested in our settlement letter of April 4, 1983 and we will take in full discharge of any claim for fees and expenses anything that your client is willing to give, and that would include nothing, if that is your position.

I consider the case closed.

(J.A. 81–82).

The parties prepared draft memoranda of understanding and discussed them with the court on May 23, 1983. Moore's counsel stated that Moore viewed the success of settlement as hinging on her waiving claims for fees. Moore felt that consistent with her responsibility as a representative of the class she could not "place her own economic interest before the interest of the class," and thus concurred in the settlement proposal. She did, however, maintain that the settlement was fair and urged the court to accept it (J.A. 73–74). NASD explained in court that it considered the waiver of fees and costs fair because it felt it could prove at trial that there was no Title VII violation; and, therefore, no costs or attorneys' fees would be compensable (J.A. 31).

On May 27, 1983, the district court held a hearing at which the parties moved jointly for preliminary approval of the settlement and for entry of a consent decree. The court voiced concern over the waiver of fees and costs:

THE COURT: All right.

Now my next question is one that I raised the last time, and I asked you as a predicate to it, do you think that the plaintiffs have secured [a] benefit for the class? And you said "Yes."

So then my next question is, if they have secured a benefit for the class, what about the question of attorneys' fees?

Well, Mr. Webster positioned himself the last time with respect to the claim for attorneys' fees. Well, that might be true and maybe he doesn't want attorneys' fees, but I still raise the question of costs.

I don't know what the costs are, but it seems to me—and I will tell you quite frankly I don't mind saying it—that if this has been of benefit to the class, and you admit it and the record shows that you admit it, it seems to me that they are entitled not only to attorneys' fees, but to costs.

Now the question of attorneys' fees I put in a different category than of costs, although they are really lumped together.

Mr. Webster and the public interest group that he is associated with may well waive and relinquish any right or any claim they may have as far as attorneys' fees are concerned, but it just seems to me unusually harsh and, I will say it,

inequitable, too, for them to leave here without getting their costs.

MR. SAMPSON: Your Honor, what I would say to that is that I have agreed that the consent decree is fair and reasonable. It recites programs which the NASD would assert that it would have undertaken in any event.

That can be open for reasonable debate as to whether it was stimulated by this lawsuit or stimulated by the management practices of the NASD.

. . . .

Your Honor, there are things in the consent decree that the NASD has agreed to within the context of the plaintiff waiving costs and attorneys' fees. That was part and parcel of our considerations of things we may have disagreed with, but we agreed to do.

THE COURT: All right.

MR. SAMPSON: And I assume that Mr. Webster stands by the agreement to waive costs and attorneys' fees.

MR. WEBSTER: I do and Sharon Moore stands by it and she has said in the document that she stands by it and she will do the best she can.

She knows she bears the responsibility for costs and that is stated in the documents.

THE COURT: All right.

(J.A. 104–06). This waiver effectively left Moore responsible for her attorneys' fees and costs *already paid* to previous counsel (roughly $3,100) and expenses incurred but not yet paid in connection with present counsel's representation (roughly $34,000). Moore, who was present in the courtroom during this exchange, was subsequently questioned by the court regarding the agreement:

THE COURT: Miss Moore, just one question.

PLAINTIFF MOORE: Yes.

THE COURT: This is the end of the line.

PLAINTIFF MOORE: Yes.

THE COURT: Do you have confidence in your counsel?

PLAINTIFF MOORE: Yes.

THE COURT: Are you satisfied with what they have accomplished?

PLAINTIFF MOORE: Yes.

(J.A. 113).

The court preliminarily approved the settlement decree on May 31, 1983, and ordered that class members be notified and a hearing held for their objections. But on July 1, Moore changed her position and, with other class members, filed a petition protesting the waiver of fees and costs (J.A. 127–30).[1] The basis of her complaint was that the waiver of fees and costs would discourage attorneys from pursuing Title VII claims. Moore requested that the court either award attorneys' fees and costs as it saw fit, or allow counsel to petition the court for those awards.

At a July 18 hearing, the district court learned that Moore's liability for costs extended to roughly $34,000. She had advanced some $3,100 in personal funds to previous counsel in the case and, as class representative, had held herself ultimately responsible for expenses. The court refused to let Moore leave with "some astronomical amount possibly hovering over her head in terms of expenses," referring to the $36,128 total, and ordered counsel to resolve the matter (J.A. 175).

On July 22, an in-chambers hearing with counsel was conducted in an effort to accommodate a settlement on the issue of fees and costs.[2] However, counsel failed to reach agreement. Moore's counsel admitted that his firm would not waive *costs* owed to it by Moore, because Moore knew her obligation when counsel took on the

---

1. Moore and class members also petitioned the court to modify the settlement decree to provide against possible retaliation, to include assurances of equal pay, and to increase the frequency of reporting requirements (J.A. 127–34).

2. Moore's lead counsel, Mr. David N. Webster, indicated that his firm and the Washington Lawyers' Committee for Civil Rights Under Law had expended $31,610.88, largely on expert witness fees (J.A. 192). Moore herself had expended $3,617.99 on legal fees and costs to prior counsel (J.A. 191).

case and knew throughout the settlement negotiations that costs totalled approximately $30,000. Professional ethics, too, he stated, precluded the waiver of costs.[3] He confided that he would not sue Moore for collection of the costs, however, and phrased the situation as follows:

> ... [A]t some point [in the process of collecting Moore's costs] I am sure I am going to say well, Sharon, that is enough, and by that time I don't know where that point comes, is when I can satisfy everybody else in the firm.

(J.A. 208). NASD's counsel took the position that Moore's previous acceptance of the decree estopped her from objecting at a class members' hearing, where only class members' objections could be heard. The court, unsure of its ability to void the settlement *to which Moore had already agreed,* had counsel brief the guidelines for assessing the decree.

On October 17, 1983, the court approved the decree.[4] In a memorandum opinion, the court found that because Moore "acknowledged that she understood and knowingly accepted and agreed with the efforts and results accomplished by her counsel, she cannot now be allowed to change her position" (J.A. 249). 572 F.Supp. 1219, at 1222. The court concluded ultimately that the settlement was fair to all parties concerned (J.A. 250). This appeal followed.

Moore contends on this appeal that the district court erred in not unilaterally modifying the merits settlement to include an award to plaintiffs of attorneys' fees and costs, which the plaintiffs had waived. Moore's position rests generally on an objection to simultaneous negotiation of fees and merits in the settlement of Title VII cases.[5] Because of the ethical problems

simultaneous negotiation creates for class representatives and their counsel, she urges this court to adopt a rule which would allow her fee provisions in the merits settlements subject to careful scrutiny and separate modification. For the reasons set forth below, we decline to disturb the settlement agreement.

## II. ANALYSIS

▮▮▮ Moore's claims are predicated on section 706(k) of the Civil Rights Act of 1964 (Title VII), as amended, 78 Stat. 261 (codified at 42 U.S.C. § 2000e–5(k)) which provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.[6]

This provision is one of the limited exceptions to the general rule of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1973), that litigants must pay their own attorneys' fees. A reasonable attorneys' fee award is not mandatory, but is within the court's discretion. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978). Congress has indicated, however, that a prevailing *plaintiff* "should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News, 5908, 5912 (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)); *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983).[7] A plaintiff need not prevail

---

**3.** A lawyer is precluded from subsidizing a client's lawsuit. *See* ABA Model Rules of Professional Conduct Rule 1.8(e).

**4.** The consent decree is reproduced in full at J.A. 251–69.

**5.** NAACP has filed a brief as *amicus curiae* urging a total ban on simultaneous negotiations.

**6.** Costs are provided pursuant to Fed.R.Civ.P. 54(d). They are discussed more fully in Part II.C.2. *infra.*

**7.** Although Congress was referring to fee awards under 42 U.S.C. § 1988, that section is nonetheless similar in purpose and design to § 706(k) of Title VII, and cases interpreting § 1988 can be applied to § 706(k) as well. *See Hanrahan v. Hampton,* 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980)

through a judgment, however, to acquire "prevailing party" status. A plaintiff "prevails" where the case is settled by a consent decree that provides the plaintiff with a substantial vindication of rights. S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* U.S.Code Cong. & Ad.News, 5908, 5912 (1976); *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). A number of circuit courts of appeals, including this circuit, have declared that a plaintiff is entitled to a fee award where it can be shown that his or her case acted as a "catalyst" in motivating the defendant to provide the primary relief sought. *See, e.g., Sullivan v. Pennsylvania Dep't of Labor*, 663 F.2d 443 (3d Cir. 1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); *Harrington v. DeVito*, 656 F.2d 264 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982); *Foster v. Boorstin*, 561 F.2d 340 (D.C.Cir.1977).

■ Prevailing party status is not limited to plaintiffs. A "prevailing" defendant may become eligible to receive fees from an unsuccessful plaintiff; however, such a situation represents the exception rather than the rule. A prevailing defendant may be awarded discretionary attorneys' fees only if the plaintiff's lawsuit was brought in bad faith or for harassment purposes,[8] or was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

The foregoing rules give force to the important policy of encouraging the bringing of Title VII cases to enforce the civil rights guaranteed therein. Through "fee-shifting" statutes in civil rights cases, Congress has created laws under which plaintiffs act as "private attorneys general." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Courts have consistently recognized this purpose and interpret-

ed the Act broadly to effectuate its remedial objectives. *See, e.g., Coles v. Penny*, 531 F.2d 609, 615 (D.C.Cir.1976) (cases cited).

Balanced against this policy is an equally important policy—namely, one of encouraging settlement of disputes. This policy is no more evident than in Title VII cases. Courts have been guided by the principle that "the central theme of Title VII is 'private settlement' as an effective end to employment discrimination." *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888, 891 (5th Cir.1970). As one court has concluded, "[i]t is thus clear that there is great emphasis in Title VII on private settlement and the elimination of unfair practices without litigation." *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir.1968). Voluntary compliance is preferable to court action. Parties are accordingly encouraged to resolve their disputes through conciliation. Thus, "it cannot be gainsaid that conciliation and voluntary settlement are the preferred means for resolving employment discrimination disputes." *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 846 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

In the Title VII arena, the fee-shifting provision interposes an additional consideration in the settlement negotiations process. Where a Title VII plaintiff presents a strong case, he or she is likely to prevail at trial or negotiate a "prevailing party" settlement on the merits, either of which would recover fees under the fee-shifting statute. However, a plaintiff who, after extensive discovery, concludes that he has a weaker case and stands to lose if the case is tried may not possess the bargaining power to bring about a favorable settlement. Thus, in the latter case, not only does the plaintiff not realize a favorable recovery, he or she fails to recover any fees or costs. In such cases, rather than being left entirely without a recovery, a

---

(per curiam); *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983).

**8.** S.Rep. No. 94–1011, *supra*, at 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912.

plaintiff may wish to waive potential claims to statutory fees and other costs. This waiver provides the plaintiff with a bargaining chip toward gaining a more favorable settlement than would have previously been possible. The defendant can also know the total extent of his liability at the time of settlement. Further, both parties avoid the uncertainties of litigation and its attendant costs and delays.

Thus, this case requires us to determine to what extent the fee-shifting provision affects parties' ability to engage in settlement negotiations in Title VII class actions. After a careful review of the decisions and authorities, we conclude that in the present context of Title VII class actions, simultaneous negotiations of merits, fees, and costs should not be prohibited completely. We also hold that a plaintiff may voluntarily waive claims to statutory fees and costs, at least where a demand for such has not been made by a defendant.

First, however, we consider NASD's claim that Moore is without standing to litigate the present suit.

A. *Standing*

NASD contends as a threshold matter that Moore has no standing to challenge the waiver of *attorneys' fees* by her counsel.[9] NASD seizes upon case law language which states that "it is the attorney who is entitled to fee awards ... not the client." *James v. Home Construction Co. of Mobile, Inc.*, 689 F.2d 1357, 1358 (11th Cir. 1982); *Maher v. Gagne*, 448 U.S. 122, 126, 100 S.Ct. 2570, 2573, 65 L.Ed.2d 653 (1980) (fees awarded to "respondents' counsel"). Thus, NASD reasons that Moore cannot assert her counsel's right to sue for fees. Appellee's Brief at 14. NASD argues alternatively that any alleged impairment of the availability of legal representation to civil rights litigants generally, or to the class in this case, is too speculative and remote to supply Moore with a sufficient interest to challenge the fee waiver.

To establish proper standing, Moore must show an injury-in-fact caused by the alleged misconduct of the defendant which is redressable by this court. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 498–502, 505, 95 S.Ct. 2197, 2204–2207, 2208, 45 L.Ed.2d 343 (1975). As the Supreme Court has put it, "the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf." 422 U.S. at 498–99, 95 S.Ct. at 2204–05 (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). The plaintiff must show "some threatened or actual injury resulting from the putatively illegal action...." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

We need not decide whether Moore or her counsel is the proper party to sue for fees owing yet uncollected.[10] NASD overlooks the fact that Moore has *already* paid over $3,100.00 in fees and expenses to prior counsel in this case. Appellant's Reply Brief at 1–2; (J.A. 191–92). Had fees not been waived, this amount might have been collected from NASD to reimburse Moore. This economic injury unquestionably constitutes a sufficient injury-in-fact; and, Moore's attribution of the waiver to the defendant's "demand" establishes the causal nexus. Further, redressability through our authority to pass on class action settlements is well-established. We conclude,

---

**9.** NASD makes no challenge to Moore's standing to contest her waiver of costs in the settlement.

**10.** Section 706(k) expressly permits attorneys' fees awards to the "prevailing party." The goal of the legislation is to encourage plaintiffs to bring meritorious suits by providing *them* a source of funds for retaining competent counsel. An attorney's right to such fees would be one of subrogation to his client's right to recover them. This appears the more reasonable approach, and is one which would greatly reduce Moore's alleged conflicts of interest. *See generally Brown v. General Motors Corp.*, 722 F.2d 1009, 1011 (2d Cir.1983).

therefore, that Moore has standing to challenge the waiver of the fee-recovery provision. Accordingly, we need not reach NASD's secondary contention that Moore's claim of impaired representation constitutes no more than a speculative and remote general grievance.

## B. *Waiver of Attorneys' Fees*

Moore asserts that all the problems raised here stem from NASD's "demand" for *simultaneous* discussion of settlements on the merits and on attorneys' fees. Appellant's Brief at 16. According to Moore, whenever the two subjects are discussed at the same time, the possibility of "trade-offs" between them will arise, thus creating an ethical conflict of interest between the plaintiff's lawyer and his client. *Id.* at 17.

The attorney, on the one hand, owes an unflagging duty to represent his client's interests.[11] If settlement is the issue, he must pursue the best settlement for his client. On the other hand, the attorney also maintains a stake in the recovery of statutory fees under the fee-shifting statute. To the extent a reduction or waiver of fees becomes part of the settlement process, counsel's interests may be placed in conflict with those of the client. Counsel can always increase the relief available to the class by reducing fees, or by relinquishing them altogether. According to Moore, when a defendant demands such a fee reduction or waiver, the pressures on ethical plaintiffs' counsel to accept that demand become virtually irresistible. The result, she concludes, is a resolution favorable to the class that is not accompanied by payment of plaintiffs' fees and costs as Congress intended.

To settle a lawsuit all at once, waivers of attorneys' fees and costs would occur during merits settlement negotiations. Underlying our inquiry, then, lurks the question whether simultaneous negotiations of mer-

its and fees and costs are permissible, or alternatively stated, whether merits settlements must occur before the parties discuss the issue of fees and cost. For purposes of analysis, we will proceed on the broader inquiry of the propriety of the waiver. Both issues, simultaneous negotiation and waiver, are ones of first impression in this circuit.

We turn first to the express language of the fee-shifting statute. Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), as amended, provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Nowhere in the express language of the statute is there provision addressing the waiver of fees during settlement negotiations. Nor is there any such discussion in the language of the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988,[12] which contains an attorneys' fees provision analogous to that contained in section 706(k).

Additionally, our review of the legislative history of section 706(k) finds no indication that settlement waivers of attorneys' fees are prohibited, much less discouraged. The legislative history of the Civil Rights Attorneys' Fees Awards Act of 1976, *supra*, which contains an extensive overview of congressional policy on attorneys' fees awards in civil rights cases, including Title VII claims, similarly fails to refer to any limitation on the negotiability of fees. Thus, we glean no guidance from the text or legislative history of section 706(k) or its counterpart, section 1988.

The issues of simultaneous negotiation and waiver have been addressed in the case

---

**11.** *See, e.g.,* EC 5–1 to 5–24, ABA Model Code of Professional Responsibility (1981).

**12.** This provision, which applies to 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 2000d *et*

*seq.,* similarly states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

law of other circuits. Moore relies on the leading case discussing simultaneous negotiation, *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir.1977), a class action employment discrimination suit seeking damages and injunctive relief. There the court of appeals set aside a settlement that resolved the merits and provided for attorneys' fees available under 42 U.S.C. § 2000e–5(k). The case is not directly on point, though, as it addressed a concern unique to common fund recoveries. The court feared that since class members are required to share the settlement pie with their attorneys, simultaneous negotiations would permit the payment of *excessive* fees to plaintiffs' counsel through "sweetheart" agreements. The court stated:

> [W]e recognize that with the increasingly heavy burden upon the courts, settlements of disputes must be encouraged, and in the absence of special circumstances, such as those mentioned by the district court in this case, we doubt the necessity to completely exclude statutorily authorized attorneys' fees from that policy. A reasonable solution, we suggest, is for trial courts to insist upon settlement of the damage aspect of the case separately from the award of statutorily authorized attorneys' fees. Only after court approval of the damage settlement should discussion and negotiation of appropriate compensation for the attorneys begin. This would eliminate the situation found in this case of having, in practical effect, one fund divided between the attorney and client.

557 F.2d at 1021. The court viewed this bifurcated approach as serving three purposes: (1) because the defendant continues to have an interest until all aspects of the case (merits, fees and costs) are settled, it preserves the benefit of the adversary system; (2) it reduces the conflict of interest between attorney and client over the distribution of the fund; and (3) it eases the court's burdensome task of settlement review. *Id.* Yet, because the case involved issues of overreaching unique to common fund cases—a situation very different from ours where only injunctive relief was obtained—only the third remedial objective would carry over to our facts.[13]

A modified version of the Third Circuit's *Prandini* rule has been followed by the Ninth Circuit, most recently in *Jeff D. v. Evans*, 743 F.2d 648 (9th Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985). In a class action alleging infringement of constitutional rights and violations of federal and state rehabilitation and education laws, defense counsel conditioned settlement upon plaintiffs' counsel's waiver of fees otherwise available under 42 U.S.C. § 1988. The district court had accepted the settlement with fee waiver, but the court of appeals reversed. It noted that its earlier decision, *Mendoza v. United States*, 623 F.2d 1338 (9th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), while not holding that stipulated attorney's fees were *per se* unacceptable, required a trial court to scrutinize the circumstances of each case. In *Mendoza*, the presence of the government as an intervenor representing the public interest had constituted an "unusual circumstance," thus minimizing the extent of the conflict of interest. No such circumstance was found in *Jeff D.*, the court concluding that "a stipulated waiver of all attorney's fees obtained solely as a condition for obtaining relief for the class should not be accepted by the court." 743 F.2d at 652. The court recognized that the district court approved the fee waiver *simply* because it was part of the settlement agreement, *without assessing its reasonableness* under Rule 23. *Id.* at 650. The case was therefore remanded to the trial

---

13. The *Prandini* decision is not without its problems. Even if such a rule were adopted, it would be difficult to enforce since it is not always possible to determine when the parties violate the rule and engage in informal discussions on fees. Additionally, the rule may discourage settlements. "By preventing agreements on fees, the decision makes it difficult for the defendant to ascertain precisely what its liability will be under a proposed settlement, eliminating the very certainty that makes settlement attractive to the defendant." A. Miller, Attorneys' Fees in Class Actions 222 (1980).

court for a determination of reasonable attorneys' fees. *Jeff D.* differs from the present case, however, in at least two material respects. First, in *Jeff D.* the defendant expressly conditioned the merits settlement on a waiver of attorneys' fees, *id.* at 650, whereas this case involves no such "demand." Second, unlike *Jeff D.* the trial court here conducted an extensive assessment of the reasonableness of all aspects of the settlement under Rule 23, including the waivers.

A number of other circuit courts of appeals have stopped short of adopting a *Prandini*-like rule, noting only that simultaneous negotiations create a potential conflict of interest over which the trial judge should exercise special scrutiny. *See, e.g., Obin v. District No. 9, Int'l Assoc. of Machinists,* 651 F.2d 574, 582–83 (8th Cir. 1981) (simultaneous negotiations "may raise a serious ethical concern"); *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1216, n. 71 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979) (simultaneous negotiations "weigh heavily" against settlement approval). In addition, a number of district courts have required parties to negotiate the merits of a case separately from the question of the plaintiffs' entitlement to attorney fees. *See, e.g., Lisa F. v. Snider,* 561 F.Supp. 724 (N.D.Ind.1983); *Jones v. Orange Housing Auth.,* 559 F.Supp. 1379 (D.N.J.1983); *Munoz v. Arizona State Univ.,* 80 F.R.D. 670 (D.Ariz.1978); *Lyon v. State of Arizona,* 80 F.R.D. 665 (D.Ariz. 1978); *Regalado v. Johnson,* 79 F.R.D. 447 (N.D.Ill.1978).

In contrast to the above decisions are those cited to us by NASD, which permit plaintiff's counsel to negotiate and waive fees as part of the settlement agreement. In *Chicano Police Officer's Ass'n v. Stover,* 624 F.2d 127 (10th Cir.1980), consolidated civil rights actions (including one claim brought under Title VII) were settled before trial. The settlement agreement did not specify a prevailing party and did not provide for attorneys' fees. The court observed that while Congress has not prohibited settlements covering payments of attorneys' fees, and that plaintiffs therefore *could* waive fees as part of the settlement, the agreement in question was at best ambiguous. The case was remanded for a determination of fees only if on remand they were found *not* to have been waived.

*Chicano* was cited in dictum in *Gram v. Bank of Louisiana,* 691 F.2d 728, 730 (5th Cir.1982), to support the proposition that a plaintiff may waive his right to attorneys' fees in a negotiated settlement. *Gram* involved a settlement silent as to attorneys' fees under the Truth in Lending Act. Because the court concluded that the settlement agreement did *not* waive fees, the case was remanded for a determination of the fee amount.

In *Lazar v. Pierce,* 757 F.2d 435 (1st Cir.1985), the First Circuit upheld a civil rights plaintiff's waiver of attorneys' fees contained in a consent decree. Lazar had sued her landlord and the U.S. Department of Housing and Urban Development ("HUD") for violations of federal housing laws. Once liability became clear, the parties entered into settlement negotiations. Lazar requested fees but dropped the claim once she became convinced that the defendants would not contribute them. The parties then entered into a settlement agreement whereby all claims for attorneys' fees (presumably under 42 U.S.C. § 1988) were waived. Following judicial approval of the agreement, Lazar's counsel sought to challenge the fee waivers, arguing that counsel was ethically forced to accept the defendants' merits . relief conditioned on a fee waiver. The district court refused to reopen the fee issue, and the court of appeals affirmed. Though the court perceived that one defendant had required Lazar's counsel to forego his attorneys' fees, the court did "not consider plaintiff's counsel's ethical problem to be the stark one contended." 757 F.2d at 438. Important to the court's determination was the fact that Lazar's counsel all along appeared to intend to attack the fee waiver following judicial approval. *Id.* at 437. The correct path, the court noted, would have been to have sought judicial assistance once the ethical

problem was perceived. *Id.* at 439; *accord* note 17 *infra*. The court noted that "[o]f course plaintiff's counsel may elect to waive [fees]." *Id.* at 438. A concurring opinion noted that *"if constitutional rights can consciously be waived by a defendant in a criminal case, it would be an excess in paternalism to conclude that parties to a civil dispute cannot do likewise." Id.* at 439 (Torruella, J., concurring) (emphasis added) (footnote omitted). Focusing on the overriding public interest in favor of voluntary settlement of disputes, Judge Torruella concluded that "[t]he removal of attorney's fees from the arena of voluntary and ethical negotiation in civil rights cases would present an unnecessary discouragement to non-litigious disposition of these controversies." *Id.* at 440.

Finally, in *White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), the Supreme Court, in a unanimous decision delivered by Justice Powell (Blackmun, J., concurred in the judgment), ruled that a § 1988 attorneys' fees request is not a motion to alter or amend the judgment which would be subject to the ten-day timeliness standard of Rule 59(e) of the Federal Rules of Civil Procedure. In so doing, the Court was presented with an argument similar to that made by Moore in this case:

> [T]he petitioner and *amici* have urged that prejudgment fee negotiations could raise an inherent conflict of interest between the attorney and client. Because the defendant is likely to be concerned about his total liability, it is suggested, he may offer a lump-sum settlement, but remain indifferent as to its distribution as "damages" or "attorney's fees." In pursuing negotiations, the argument continues, the lawyer must decide what allocation to seek as between lawyer and client. Accordingly, petitioner argues, to avoid this conflict of interest any fee negotiations should routinely be deferred until after the entry of a merits judgment. Although sensitive to the concern that petitioner raises, we decline to rely on this proffered basis. *In considering whether to enter a negotiated settle-ment, a defendant may have good reason to demand to know his total liability from both damages and fees. Although such situations may raise difficult ethical issues for a plaintiff's attorney, we are reluctant to hold that no resolution is ever available to ethical counsel.*

455 U.S. at 453–54 n. 15, 102 S.Ct. at 1167–68 n. 15 (emphasis added). Appellee asserts that *White's* rationale applies equally to the facts of our case. However, it appears that *White* concerns primarily the *Prandini* situation of "sweetheart" agreements which tempt plaintiffs' counsel to accept excessive fees. Those situations are decidedly different from the present case and involve wholly separate tensions. In the present case rather than being concerned about tempting plaintiffs' counsel to be greedy, a situation which ethical counsel can avoid, we focus on whether defense counsel may have coerced plaintiffs' counsel into accepting less.

While we can draw no consistent rule from the case law, we do recognize the conflict of interest problems that might develop in simultaneous negotiation of merits and fees. The New York Bar Association has concluded that the potential conflict rises to its height when a defendant conditions settlement of the merits on waiver of statutory fees under civil rights statutes. The Bar Association concluded that such demands were so serious that it would be unethical for defense counsel to engage in them. Opinion No. 80–94, Committee on Professional & Judicial Ethics of the New York City Bar Assoc., 36 Record of N.Y.C. B.A. 507 (1981). The District of Columbia Bar Legal Ethics Committee has similarly held such demands to be unethical. Opinion No. 147, District of Columbia Bar Legal Ethics Committee, *reprinted in* 113 The Daily Washington Law Reporter 389 (1985).

The issue has provoked debate within our circuit. In March 1983, the Judicial Council of the United States Court of Appeals for the District of Columbia Circuit appointed a committee of judges and lawyers to study,

*inter alia,* simultaneous negotiation of merits and fees and fee waivers. After soliciting views from the practicing bar, a lawyer subcommittee charged with studying the issue filed its Final Subcommittee Report of the Committee on Attorneys Fees ("Report"), *reprinted in* Bar Report, Aug./Sept. 1984, at 4, dated April 11, 1984. *The subcommittee determined ultimately that a rule was not advisable.* The answer depends entirely on the circumstances of each case, the Report concluded. Report at 20.[14]

■ Upon review of the statute, case law, and other authorities, it becomes apparent that in the present context of Title VII class actions, simultaneous negotiations of merits and fees/costs and waivers of fees and costs should not be prohibited *per se.* We thus decline to adopt the approach offered by the Third Circuit in *Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir.1977). We similarly decline to adopt the modified version of that rule as followed by the Ninth Circuit in *Jeff D. v. Evans,* 743 F.2d 648 (9th Cir.1984).

■ What we have here, as we shall see in our subsequent discussion, is a plaintiff who, after extensive discovery, *on her own initiative* and through counsel, sought to settle her case through offers of settlement.[15] To adopt the Third Circuit rule would deprive Title VII plaintiffs of this right to waive their statutory fees and costs and force them to negotiate first and exclusively on the merits of the case. Defendants in such cases would be more reluctant to settle at this early stage because of uncertainty about their ultimate liability

**14.** The subcommittee also recognized that the purpose of *defendants'* settlement offers which include fee provisions is not, in most cases, to create an attorney-client conflict. Nor is it to punish or deter plaintiffs' attorneys from taking on fee-shifting cases. Generally speaking, defendants make such offers to limit their total exposure; this could not occur in a bifurcated settlement process. This is true irrespective of whether the settlement involves monetary or injunctive relief. Fees and costs, always being monetary in nature, do not depend on the nature of the merits relief.

With regard to a defendant's right to make settlement offers, the Report concludes:

The key in these situations is whether the defendant's offer is reasonable in light of all of the circumstances, including the chances of success on the merits and the risk of possible exposure in damages and attorneys fees. And in making such determinations, the legitimate interest of the fee shifting provisions must be balanced against the legitimate interest of the defendant, whether a governmental agency or private party, in making an offer which will fix liability with considerable certainty. This balancing approach applies regardless of whether the issue is phrased in terms of the right of the defendant to make a lump sum settlement offer, or the right to refuse to pay fees to the plaintiff's attorney while providing some measure of relief to the client. *In both situations, the inquiry is the same and can be decided only on a case by case basis, assessing the reasonableness of the defendant's conduct.*

Because of its conclusion that the matter cannot be decided on an across-the-board basis, the subcommittee concluded that it would be unwise to attempt to write a rule. It is for these reasons that the subcommittee rejected the views expressed in *Prandini* and other cases such as *Lisa F. v. Snider,* 561 F.Supp. 724 (N.D.Ind.1983), and instead adopted the views expressed in *White v. New Hampshire Dept. of Employ Sec.,* 455 U.S. 445 [sic], 453 n. 15, 102 S.Ct. 1162, 1167 n. 15, 71 L.Ed.2d 325 (1982), that the simultaneous settlement of fee disputes does not necessarily create an impermissible conflict of interest.

Report at 21–22 (emphasis added).

**15.** The "nature of the ... distinction between plaintiff-suggested waiver and defendant-coerced waiver" is "illusory" only from a paternalistic point of view. *See* Dissent at 1114. The dissent would find attorneys' fees settlements contained in simultaneously-negotiated settlements presumptively invalid absent "unusual circumstances." It would thus read into Title VII a provision unknown to any other field of law. Undoubtedly, under the dissent's view, more cases would proceed to trial, if for no other reason because of the defendants' intransigence for settling merits issues without knowing their liability for fees. As for those Title VII plaintiffs with less than strong claims, the unfortunate and I am sure unintended consequence would be to burden Title VII plaintiffs. The dissent's prophylactic approach also displays an implicit lack of trust in the practicing bar's ability to engage ethically in settlement negotiations. I am unwilling to accept any such notion. As noted here and amplified by Judge Wald's concurring opinion, any unreasonable conduct that arises will be kept in check through the district court's exercise of its Rule 16 and 23 powers if promptly brought to the court's attention.

for attorneys' fees and costs. *See White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 453 n. 15, 102 S.Ct. 1162, 1167 n. 15, 71 L.Ed.2d 325 (1982); A. Miller, Attorneys' Fees in Class Actions 222 (1980). As a result, many more cases would fail settlement and proceed to trial. Thus, a requirement in every case that merits be discussed and settled first would prove ultimately a disservice to plaintiffs as well as defendants.[16] To the extent Moore urges that Title VII plaintiffs have a right to insist on a bifurcated settlement negotiation procedure, nothing in the statute or its legislative history supports this contention, and to apply such a gloss to section 706(k) would be unreasonable. To the extent parties to a Title VII action may prefer to adopt such a procedure, they are, of course, free to do so. *See* Report, *supra,* at 19. We hold therefore, as to the facts in this case, that in a Title VII class action plaintiffs may, voluntarily and on their own initiative, offer a waiver or concession of possible claims for fees and costs in an effort to encourage settlement.[17]

This approach respects the strong policy favoring the settlement of Title VII litigation and conforms to the statute's goal. As previously stated, a plaintiff's costs and fee waivers are most likely to occur in instances where the plaintiff's case is relatively weak and the defendant is willing to predict with some degree of certainty that it would prevail on the merits should the case proceed to trial. Where a plaintiff's case is relatively stronger, the plaintiff's bargaining power will be commensurately greater. Thus, the plaintiff should be able to exact additional concessions from the defendant, including fees and costs.[18] And because defendants may not wish to settle without determining their full liability, settlements would be deterred if fees and costs concessions were always barred under a *Prandini*-type rule.

**16.** Appellants suggest it is possible in a bifurcated approach to permit limited discussion of fees and costs (such as total hours expended, hourly rate, etc.) during the merits settlement which would give defendants a ball park idea of total liability. Appellant's Brief at 40; Appellant's Reply Brief at 11 & n. 10. This approach is no more satisfactory, however, because it would permit through the back door what was made impermissible through the front. At best, it gives a defendant only a limited indication of his ultimate liability.

**17.** The facts before us do not present the question of whether a *defendant* can or should be permitted to make settlement offers which encompass both merits and fees/cost, and we accordingly do not decide that issue. It is noted in passing, however, that such offers present some difficulty for plaintiffs' counsel. *See* Opinion No. 147, D.C. Bar Legal Ethics Comm., *reprinted in* 113 The Daily Washington L.Rptr. 389 (1985).

But it does not appear that plaintiffs' counsel is without ability to avoid the potential ethical dilemma. For example, plaintiffs' counsel could reduce the ethical tension by informing their clients early on of the potential conflict of interest. If the conflict does arise, full disclosure and client participation in the settlement negotiations may mitigate its effect. Alternatively, carefully drafted retainer agreements could minimize the potential conflicts—*e.g.,* by vesting the statutory fee recovery in the client. By this method, the attorney and client would no longer have the independent claims for fees which create the conflicts of interest in simultaneous negotiations. *See, e.g., Brown v. General Motors Corp.,* 722 F.2d 1009, 1011 (2d Cir.1983). Plaintiffs' counsel is always free to, and should, move the district court under Fed.R.Civ.P. 16 or 23 for an on-the-record conference to discuss the status of the case, including any particular dilemma involving simultaneous negotiations. Levin, *supra,* at 520–21.

**18.** Amicus NAACP asserts that the chance of obtaining class relief may be jeopardized no matter what the factual context. Brief of NAACP at 3. Amicus contends that the situation is particularly acute even where the plaintiffs have a strong case and the *defendant* offers complete relief to the class conditioned upon the relinquishment of fees and costs. Our decision does not touch on this point, since it holds only that *plaintiffs* may offer fee and cost concessions. However, the strength of amicus' argument is questionable. A defendant who realistically assesses the strength of the plaintiff's case will recognize the likelihood of a fee recovery and will be encouraged to avoid any further litigation costs by settling. A defendant who refuses to settle merits and fees will only increase both his expenses and his liability for plaintiff's expenses. The plaintiff retains his right, of course, to proceed to trial, where fee recoveries will be commensurate with the strength of the case. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Moreover, this approach does not compromise the interests behind the fee-shifting statutes to promote the enforcement of the substantive legislation. Rule 23(e) of the Federal Rules of Civil Procedure accords the district court wide discretion to assure itself that all aspects of the settlement proposal are fair to the named and unnamed parties. The Rule states that "[a] class action shall not be dismissed or compromised without the approval of the court." *See* C. Wright & A. Miller, Federal Practice and Procedure § 1797 (1972). Rule 23, then, places the determination properly within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation. Where the district court finds circumstances where approving such waivers would be reasonable, it may do so but must give reasons for its conclusion. Likewise, where the court finds that such approval would be unjust, it should deny the waivers but must state its reasons for doing so. Additionally, Moore's fear that plaintiffs will routinely be forced to bear their own attorneys' fees and costs—and thus that attorneys will be discouraged from taking on Title VII cases—is unfounded under the present holding. Our decision clearly does not under any circumstance *require* plaintiffs to waive fees and costs. We merely recognize plaintiffs' right in cases such as this to exercise that option.

Having rejected a *per se* prohibition of simultaneous negotiation of fees and costs and merits and accordingly against the waiver of fees and costs, we turn to the facts of this case to review the district court's decision. Because the issues of attorneys' fees and costs raise separate concerns and involve different relationships, we treat them separately below.

C. *The District Court's Approval of the Settlement*

1. *Attorneys' Fees*

■ Generally, a district court's approval of a proposed consent decree under Rule 23 should be reversed only if its approval was an abuse of discretion. *Young v.*

*Katz*, 447 F.2d 431 (5th Cir.1971). To be sure, "the abuse of discretion standard cannot be used as a rubber stamp to approve all settlements, especially in cases involving the important [Title VII] issues here involved." *United States v. City of Miami*, 614 F.2d 1322, 1335 (5th Cir.1980) (Title VII suit). Our review accordingly will require a searching examination into the reasonableness of the settlement. The degree of our deference to the trial court depends upon a variety of factors, including but not limited to the familiarity of the trial court with the lawsuit, the stage of the proceeding at which the settlement is approved, the types of issues involved, *id.* at 1334–35, the strength of the plaintiffs' case and the measure of requested relief secured. As outlined above, we must also focus on the parties' conduct and the proffered reasons for it, and the policies underlying Title VII. While voluntary compliance with Title VII through settlement is the preferred method, we recognize that "Congress intended federal courts to exercise final responsibility for enforcement of Title VII." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 56, 94 S.Ct. 1011, 1023, 39 L.Ed.2d 147 (1974). In attacking this settlement, Moore bears the burden of making a clear showing that the district court has abused its discretion. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455–56 (2d Cir.1974).

■ In the present case, the district court had been actively involved in overseeing discovery and became very familiar with the progress of the negotiations. The court was acutely aware of and sensitive to the concerns of the parties. No less than three separate hearings were conducted by the court: a preliminary settlement hearing; a Rule 23 fairness hearing; and an in-chambers settlement conference. The court had acquired a good feel for the case. It was also close to trial, and both sides declared their intention to proceed to trial if necessary (J.A. 105). Additionally, the district court was mindful of the potential problems created by the waiver of fees (J.A. 167).

Moore contends that NASD coerced the waiver by pitting her between a "stark choice" of (1) winning a "significant victory" for the class and sacrificing fees, and (2) possibly winning less from the court. Appellant's Brief at 20; Appellant's Reply Brief at 4.[19] Moore asserts that the district court erred in permitting NASD to force such a decision. But in reality, she overstates the extent of the class recovery. Most of the settlement related to the *continuation* of existing NASD practices, some of which were "longstanding." *See* Consent Decree at §§ XI, XIII–XV, XVII–XVIII; J.A. at 9–12. Whether the institution of this lawsuit had a catalytic effect in bringing about any of NASD's affirmative programs was debated by counsel at oral argument; the district court made no such finding. Moore had even relinquished her back pay claims, conceding they were "problematical at best." Plaintiff's Memorandum in Support of Proposed Consent Decree at 3 (J.A. 66). Thus, the appearance of victory in the settlement agreement overshadows its true substance.

In this case, a number of additional factors weigh in favor of approving the attorneys' fees component of the settlement agreement. Moore, through counsel, initiated the settlement offers. The defendant, contrary to Moore's charges, never "demanded" a fee waiver. The fee waiver was introduced for the first time by the offer of plaintiffs' counsel (J.A. 81). Prior to Moore's final offer, NASD declined all Moore's offers of settlement. Moore or her counsel certainly cannot force the defendant to accept an offer of settlement, either with or without any waivers.

Even assuming that section 706(k) vests counsel with an independent claim to attorneys fees, Moore's counsel, cognizant of the chances of obtaining fees through success at trial, *chose* to waive fees in an effort to make the offer proposing only injunctive relief more palatable to NASD. It is also relevant that never once did Moore's counsel intimate an objection to

waiving fees, as might be expected had counsel felt "coerced." On the contrary, counsel represented to the district court his willingness to waive fees (J.A. 105). Moore herself had even personally urged that the district court accept the settlement, complete with all waivers (J.A. 72, 74, 105–06). These facts do not support Moore's contention that the fee waiver was "coerced."

The evidence bears out that Moore understood she had a weak case on the merits. The evidence also bears out that Moore's counsel, after extensive discovery, came to the same realization. Given the possibility of receiving no recovery through trial (and thus no recovery of attorneys' fees from NASD), Moore, here with the approval of her counsel, opted to waive fees in hopes of encouraging NASD to settle. The district court, after careful consideration, concluded that Moore "understood and knowingly accepted" this result (J.A. 249). Given these realities of Moore's particular case, it cannot be said that the approval of this settlement was an abuse of discretion.

### 2. *Costs*

Costs are accorded to prevailing litigants, including class representatives, under Rule 54(d) of the Federal Rules of Civil Procedure, which provides:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs....

Though the allowance, disallowance, or apportionment of costs is in the sound discretion of the district court, "the general proposition is that the prevailing party is entitled to costs in the district court as of course." 6 J. Moore, Moore's Federal Practice § 54.70[5] (2d ed. 1985) (footnotes omitted). The award of costs to the prevailing party is not automatic, though, because the rule is qualified by the phrase "unless the court otherwise directs." Nor has either

---

**19.** As previously stated, Moore had paid some $3,000 to prior counsel; Moore's counsel during this stage of the litigation estimated his fees in the nature of $200,000.

party suggested that costs cannot be waived. The inquiry here is whether the district court abused its discretion in approving the proposed settlement by approving therein a waiver of costs awardable under Rule 54(d).[20]

Moore's "costs" for which she seeks recovery from NASD consist of court costs, a portion of the roughly $3,000 already paid to prior counsel, and those costs due and owing to present counsel, largely in the form of expert witness fees and related expenses (about $34,000). One would think that Moore's personal liability for such costs would have been of paramount concern to her. But somewhat surprisingly, she accords relatively little emphasis to the issue. Rather, it was the district court judge who was initially skeptical about and continued to press the issue of Moore's waiver of costs. *See* J.A. 104–06, 156–65, 172–78, 187, 197–208.

Moore asserts that a waiver of costs in a class action presents a secondary conflict of interest between the class representative and the class. Appellant's Brief at 21–22. She contends that the named plaintiff should not be placed in the position of shouldering the burden of expenses in order to secure class relief. We do not doubt that as class representative Moore's personal interests generally may have been placed in some conflict with those of the class. This conflict is not endemic to this case, though. Electing between self and group interest is an inevitable aspect of class representation. As to expenses, a class representative bears the burden of these in any class action. It is precisely for such a reason that to qualify as a class representative, a plaintiff must demonstrate that he or she has the resources to bear the expenses of litigation and to protect the class interest. *See* 3B J. Moore & J. Kennedy, Moore's Federal Practice, ¶ 23.07[1.–1] (2d ed. 1985). Had the plain-

tiffs foregone settlement and lost at trial, Moore would be in the very same position she now finds herself—*i.e.*, left to collect expenses from class members. Moreover, she would not have secured *any* relief for the class. We are sensitive to Moore's concerns. However, these concerns arise in many class actions because of the nature of class representation. For better or worse, she undertook the obligations and duties of a class representative. That she must now seek reimbursement for costs from class members does not invalidate the settlement agreement.

Pertinent here, too, is the fact that Moore conceded that *her* claims for back pay were "problematical at best." Any conflict between Moore's personal claims and those of the class was diminished, given that she perceived little likelihood of recovery on her claims. In this instance, we do not think that Moore was placed in a position too different from that of any other class representative. In fact, she may even have been in less of a conflict since she was no longer an employee of NASD and her only personal claim did not appear to her to be recoverable.

The record shows that Moore was fully aware of the extent of her liability when she consented to the settlement agreement. In her Memorandum in Support of the Proposed Consent Decree, Moore, fully cognizant of her liabilities, maintained that the settlement was fair and urged the district court to accept the waiver of costs (J.A. 72–74). Indeed, she emphasized that "[t]he key to acceptance of this provision lies in the heart of the settlement process" (J.A. 72). Moore, through counsel, reaffirmed this belief at the settlement conference held May 27, 1983 (J.A. 105–06).

It also became apparent to the district court that, as a practical matter, Moore would not be held liable for the bulk of the

---

**20.** The *power* to tax particular items as costs and limits on the amount of their recovery are detailed in 28 U.S.C. § 1920. In this circuit, recovery for expert witness fees is limited to those provided under 28 U.S.C. § 1821 unless "exceptional circumstances" exist. *Quy v. Air*

*America, Inc.,* 667 F.2d 1059 (D.C.Cir.1981). We do not pass on the extent of Moore's costs which might have been recovered, but note only that the amount was subject to possible reduction according to these statutorily imposed limitations.

costs still owing. At the final in-chambers conference, Moore's counsel explained:

As to Sharon Moore ... I have waived my fees, and I have waived claiming against Mr. Sampson's client for those costs and, you know, my partners say I am going to bill Sharon Moore, and we did take on the case. She knew her obligation when we took it on. We have talked about it many times since. We have talked about it in connection with this settlement, and she told you that she knew that they were about $30,000. And I intend to get back for my law firm something.

You know, I tell you this, and as I told Mr. Sampson, I am not going to sue the lady for those costs because I don't think I am going to have to. She is the kind of person who has quality, and she is going to do the best she can to start to cut them down, and at some point I am sure I am going to say well, Sharon, that is enough, and by that time I don't know where that point comes, is when I can satisfy everybody else in the firm.

(J.A. 207–08).

We agree with the district court that the record indicates that Moore knew her waiver included any potential claims for costs. Moore's counsel confirmed that when the case was settled, Moore was fully aware that she would be potentially liable for costs of approximately $30,000 (J.A. 72). Although Moore later claimed that her waiver of costs was "coerced," it is telling that not only had she never previously objected, she in fact had urged the court that the waiver was fair (J.A. 72–74). Moreover, through counsel she *offered* to waive costs. The district court, realizing that Moore was aware of the extent of her liability throughout the relevant period of the settlement negotiations, concluded that she *"understood* and *knowingly* accepted and agreed with ... the results accomplished by her counsel" (J.A. 249) (emphasis added). This necessarily includes the waivers which she acknowledged. These factual findings are entitled to considerable deference and can be overturned only if clearly erroneous. Fed.R.Civ.P. 52(a). The

district court additionally found that Moore's strong educational background weighed heavily in favor of not disturbing the settlement. We cannot say that the district court's approval of the cost waiver constituted an abuse of discretion.

Having decided that simultaneous negotiations of merits and attorneys' fees and costs was not impermissible under the facts of this particular case, and that the district court did not abuse its discretion in approving the settlement and waivers, we need not address Moore's argument that the district court should have unilaterally modified the consent decree to include costs and fees.

Moore alleges, however, that once she had agreed to the terms of the settlement, the district court considered itself without power to allow her to change her decision. Moore speculates that the district court might have reached a different decision— *i.e.,* unilateral modification of the fee and cost provisions—had it not been "erroneously" informed of the law. Appellant's Brief at 32–33. She argues that the district court believed that as a matter of law it could not alter the fee provision without upsetting the whole settlement. But when settlement talks on costs failed, Moore concludes, the court felt that the "unfairness" of the cost waiver did not justify rejection of the merits settlement. *Id.* Thus, she argues that we must remand the case to the district court for an adjudication under "proper" law. We find no indication in the record, however, to suggest that the court was acting under an erroneous interpretation of the law. The court's statement that Moore had accepted her settlement and "cannot now be allowed to change her position" evidences not that the court felt compelled to reach this conclusion, but only that it *decided* to hold Moore to her agreement. The court's later statements confirm this point:

This Court recognizes that it may refuse to accept and approve a settlement which is unfair, questionable in substance and merit or which shocks the

conscious [sic]. Such is not the case here. And while at one time it had reservations and doubts about the manner in which counsel fees and costs were handled, a careful review of the course of this litigation, including the current settlement efforts, leads to a different result and the present conclusion.

(J.A. 249). Thus, contrary to Moore's assertion, we think it far from clear that the district court relied on an erroneous assumption of its legal capabilities, and we refuse to infer such a conclusion.[21]

In sum, Moore's basic argument is that she obtained substantial relief through her settlement, and that under applicable precedent and congressional intent she should be awarded fees and costs. It is one thing for a plaintiff to negotiate a settlement through a waiver of fees and costs. It is quite another thing, though, to permit a plaintiff who received this settlement to later claim prevailing party status which would entitle her to fees and costs. Permitting a plaintiff to claim fees and costs based on the settlement obtained only through the waiver of those very claims end runs the statute. Thus, whatever level of recovery Moore may be said to have extracted from NASD, which we have already suggested was questionable, the settlement was substantially induced by Moore's voluntary offer to waive fees and costs. Because we cannot know what portion of the settlement was achieved through the waivers, it would be impermissible speculation to determine whether

plaintiffs are "prevailing parties." True, Congress' concern in enacting fee-shifting provisions extended to a category of cases where the potential financial rewards were not commensurate with the social importance of ending employment discrimination. *Newman v. Piggie Park Enterprises, Inc., supra,* 390 U.S. at 402, 88 S.Ct. at 966. However, as the Supreme Court has noted, "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit." *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Judging from the circumstances of this case, we do not find that these waivers offend congressional policy designed to award fees to only "prevailing" plaintiffs.

## III. CONCLUSION

In conclusion, we emphasize the narrowness of this decision. Moore, a Title VII *plaintiff,* was free *voluntarily* to offer to waive claims to costs in a class action suit, and contemporaneously, through counsel, free *voluntarily* to offer to waive claims to attorneys' fees awardable under 42 U.S.C. § 2000e-5(k). The settlement based on Moore's *voluntary* offers poses no threat to the policies of Title VII enforcement while furthering the public policy in favor of encouraging voluntary settlement of disputes.

The district court's order approving the settlement agreement is affirmed.

*Judgment accordingly.*

---

**21.** What may be inferred is the district court's concern that the terms of a settlement are part and parcel of each other. *See* J.A. 204. The court's concern for the plaintiffs here was balanced by this concern for the integrity of the negotiation process itself. It is clear in this case, based on the negotiation process, that the issue of attorneys' fees and costs bore heavily on NASD's acceptance of the settlement agreement. Absent these waivers, NASD likely would not have joined in the agreement.

Moore emphasizes in her brief that it can hardly be proper for a court to confirm the settlement simply on the ground that NASD may have been unaware of the court's power to modify that provision. Appellant's Brief at 33. *Assuming* that were true, however, a court need

not compound error by *unilaterally* modifying a settlement which originally contemplated payment of *no* fees. The rule Moore advocates would result in the alteration of a material part of the Consent Decree, which was a condition to its very acceptance by NASD. Granted, a court may modify a fee award, under its authority to oversee such awards, where the parties contemplated payment of reasonable attorneys' fees. *See, e.g., Jones v. Amalgamated Warbasse Houses, Inc.,* 721 F.2d 881 (2d Cir.1983) (court *reduced* fee award), *cert. denied,* — S.Ct. —, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984). It does not follow, though, that a court should necessarily *impose* a fee award where the parties expressly waived fees. To do so would undermine the settlement process.

WALD, Circuit Judge, concurring in the judgment:

I write separately because, although I agree with Judge MacKinnon that on the facts of this case, the district court's approval of the settlement did not constitute an abuse of discretion, I share Judge Wright's concern that simultaneous negotiation of a settlement on the merits and limitations on attorneys' fees can in some circumstances create serious conflicts. Indeed, the local bar ethics committee has recently ruled that in Title VII actions, a defendant "may not condition an offer of settlement upon an agreement by plaintiff's counsel to waive or limit the plaintiff's potential statutory [attorneys'] fees." District of Columbia Bar Legal Ethics Committee, Opinion No. 147, *reprinted in* 113 Daily Washington L.Rep. 389, 389 (1985).

## I.

Like Judge MacKinnon, I rely heavily on the particular facts of this case. The first concrete settlement offer, after many months of extensive discovery, came from the plaintiffs. *See Moore v. National Ass'n of Sec. Dealers, Inc.*, 572 F.Supp. 1219, consent decree at 3-4 (D.D.C.1983), Joint Appendix ("J.A.") at 256-57; Letter from David N. Webster to Richard T. Sampson (Apr. 4, 1983), J.A. at 76. That offer was unacceptable to the defendant, the National Association of Securities Dealers. Although the Association was apparently willing to institute the employment practices requested by the plaintiffs, and in fact claimed that it would have done so apart from this litigation, it was not willing to pay out any money, whether as damages, back pay, attorneys' fees, or costs. During the several days of hearings and conferences Judge Parker held on the proposed settlement, counsel explained that the Association believed it had not violated Title VII and was unwilling to suggest otherwise by submitting to a financial penalty. *See* Hearing Transcript at 12 (May 23, 1983), J.A. at 31. Plaintiffs, who were obviously eager for a settlement, returned again and again with offers incorporating the consensus on substantive relief. Those offers first limited attorneys' fees and costs to $100,000, later reduced the amount to $50,000 plus expenses, and finally waived fees and costs altogether. *See* Letter from David N. Webster to Richard T. Sampson (May 11, 1983), J.A. at 81. The district judge questioned both the plaintiffs' attorney and the class representative herself about the waiver; they stated unequivocally that the waiver was fully voluntary and that they were satisfied with the settlement in its entirety. *See* Hearing Transcript at 16-17, 24-25 (May 27, 1983), J.A. at 105-06, 113-14. Neither approached the judge with any explanation that the defendant's intransigence had coerced the settlement or that the plaintiffs were surrendering from lack of financial ability to carry on the case. After closely scrutinizing the settlement, and after a *sua sponte* effort to get counsel to renegotiate the waiver of costs, the district judge found that the class representative and her counsel had indeed accepted the settlement willingly and that it was fair to all parties.

Within a month, the named plaintiff had second thoughts and objected, as a class member, to the very settlement she had approved as class representative. In this court she asks for a general prophylactic rule, applied retroactively to her case, that fees and costs cannot be negotiated simultaneously with the merits of a Title VII settlement. She asks this court to enforce the benefits of the settlement to the class, but to invalidate the waiver of fees and costs and order the district court to award fees and costs as if there had been no waiver.

## II.

As both Judge MacKinnon's and Judge Wright's opinions make abundantly clear, the merits of an all-encompassing prophylactic rule are quite uncertain. In *Jeff D. v. Evans*, 743 F.2d 648 (9th Cir.1984), *cert. granted*, ─ U.S. ─, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985), the Ninth Circuit declared that, in the absence of "unusual

circumstances," district courts should not enforce any agreements on attorneys' fees, including waiver of those fees, that were negotiated at the same time as a settlement on the merits. *Id.* at 652. The *Jeff D.* approach thus frees class representatives from making the hard choice between obtaining relief for the class through settlement but forgoing attorneys' fees, or rejecting present relief for the class in the hope of eventually recovering fees that will satisfy any personal liability the representative may have to counsel.[1] On the other hand, the *Jeff D.* approach probably means that a defendant who is willing to grant immediate prospective relief to a plaintiff case, but would rather gamble on the outcome at trial than pay attorneys' fees and costs up front, will never settle. In short, removing attorneys' fees as a "bargaining chip" cuts both ways. It prevents defendants, who in Title VII cases are likely to have greater economic power than plaintiffs, from exploiting that power in a particularly objectionable way; but it also deprives plaintiffs of the use of that chip, even when without it settlement may be impossible and the prospect of winning at trial may be very doubtful.

The public interest amici are apparently willing to take the risks of a *Jeff D.* rule, and indeed the ruling of the local bar ethics committee practically settles the question of whether local defendants in Title VII actions may make affirmative offers that include a waiver or stipulated amount of attorneys' fees. It is not clear, however, how that ruling should affect a defendant's responses to an offer from the plaintiff that includes restrictions on attorneys' fees. Nor is it clear in what circumstances, if any, a defendant may properly reject an offer from the plaintiff with remarks hinting that fee restrictions are the crucial missing element in the proposed settlement. But as Judge MacKinnon points out, no plaintiff and, for that matter, no district judge can force an unwilling defendant to settle. Moreover, it seems quite unrealistic to cabin the bargaining by forbidding the defendant, regardless of the circumstances, to tell the plaintiff *why* the defendant is refusing overtures, if the reason is an unwillingness to pay fees.[2] The ruling of the local bar ethics committee appears targeted primarily not to this special situation, but rather to a broader problem: a defendant which, as its opening gambit in negotiations, demands a fee restriction routinely or without regard either to the strength of the plaintiff's case or to the merits relief the defendant may be willing to offer.[3] I agree that such a policy

---

**1.** Appellant also makes much of the dilemma that may arise when plaintiff's counsel receive a settlement offer conditioned on a fee waiver, and plaintiff's counsel have already agreed not to look to their client for fees. Because counsel cannot reject a settlement if their client instructs counsel to accept, in such cases "[d]efense counsel ... are in a uniquely favorable position when they condition settlement on the waiver of the statutory fee: They make a demand for a benefit that the plaintiff's lawyer cannot resist as a matter of ethics and one in which the plaintiff has no interest and therefore will not resist." District of Columbia Bar Legal Ethics Committee, Opinion No. 147, *reprinted in* 113 Daily Washington L.Rep. 389, 394 (1985).

In some litigations, this concern might be a real one. However, my belief is that most public interest counsel explain the financial details of the litigation well in advance to their clients, and that few clients will against the advice of counsel leap to accept a settlement that deprives counsel of fair compensation and themselves of any provision for costs. In my experience, respected counsel do not and should not undertake public interest representation until an understanding is had with clients as to the range of appropriate settlements. On balance, I do not believe the likelihood that irresolvable problems between counsel and clients may occur is high enough to justify so broad-ranging a rule as would cover the present case.

**2.** *Cf.* Diss.Op. at 1115 ("when a defendant explicitly agrees with a plaintiff's merits proposals but refuses to settle until fees and costs are entirely waived, the distinction between defendant coercion and plaintiff volition is meaningless").

**3.** The limited scope of the committee's prohibition is borne out by another ruling in the same opinion: an attorney may ethically "offer a single sum in settlement of the claims against [a Title VII] defendant for both damages and attorneys' fees." District of Columbia Bar Legal Ethics Committee, Opinion No. 147, *reprinted in* 113 Daily Washington L.Rep. 389, 389 (1985). Such a single-sum offer is, in effect, the simultaneous negotiation of the merits settlement and attorneys' fees. However, a single-sum offer allows the plaintiff and plaintiff's counsel, rath-

is not only unfair to opposing counsel, but over the long haul would deter attorneys from bringing meritorious Title VII claims and thereby frustrate an entitlement that Congress deemed vital for the success of the statute.

This case, however, is not that one. This case instead presents a vigorous effort by plaintiffs' counsel to settle a case for modest and entirely prospective relief. Perhaps, as Judge Wright argues, the line between "voluntary" settlement offers from plaintiffs that include fee waivers and "coercive" insistence on waivers by defendants will, in many instances, be an uncertain one. I nonetheless believe that just such specific details of the negotiation determine the ultimate reasonableness of the waiver. Each negotiation, like each litigant, is unique; reasonableness can only be determined by looking at the strength of the plaintiff's case, the stage at which the settlement is effective, the substantiality of the relief obtained on the merits, and the explanations of the parties as to why they did what they did. I am satisfied that the terms of the settlement under review, including the waiver of costs and fees, were reasonable.[4]

### III.

A rule forbidding enforcement of limits on attorneys' fees that are negotiated simultaneously with settlements on the merits may ultimately be required in some categories of cases—for example, settlements in which the defendant pays significant money damages or settlements in which a defendant, contrary to the ruling of local bar ethics committee, affirmatively demands a waiver as a precondition to negotiations. But I believe that in cases such as this, other guards against an unfair result can be successful. First, it bears emphasis that class representatives and class counsel are under absolutely no legal or ethical obligation to accept a settlement that unfairly saddles them with the expenses of a controversy that has produced benefits for the plaintiff class. The representatives are entitled to insist on a settlement that is fair to them as well as to the class. Second, class representatives or counsel may seek assistance from the district judge if a Title VII defendant attempts to exploit potential conflicts. The trial judge has tools at hand during the negotiations that an appellate court, faced with only the result, entirely lacks. The court might, in particular cases, advise separate negotiation of fees and costs; it might, in its discretion, refuse to approve a settlement that contained simultaneously negotiated fees and costs; or it might even refuse to enforce a waiver provision in a settlement agreement, while approving the balance of the agreement. *Cf.* Diss.Op. at 1118–1119. I note, however, that where

---

er than the defendant, to divide the available fund between the plaintiff and counsel. A defendant's demand for a fee waiver may be particularly suspect when the defendant offers financial relief on the merits, since the defendant cannot then claim that it is blameless and therefore will not pay out any money.

**4.** *See* Fed.R.Civ.P. 23(e). Under rule 23(e), compromises of class actions must be submitted to the court for approval. Among the purposes of a "fairness hearing" under rule 23(e) is an effort to ascertain whether the settlement negotiated by class representatives is fair to all class members. Thus, detection of a "sweetheart" settlement—one in which class counsel or class representatives or both have taken too much of the pie for themselves—is squarely within the traditional ambit of the hearing.

"Sacrifice" situations are different. Admittedly, they raise special problems in class actions

for a class representative. *See infra* at 1117. However, a settlement proposal that includes a waiver of statutory attorneys' fees can create a conflict in any case, whether or not it is a class action, if the plaintiff is not liable to his or her attorney for attorneys' fees. *See supra* note 1.

A fairness hearing under rule 23(e), of course, occurs only in class actions. A rule 23(e) hearing may help air the "sacrifice" problems when it happens to come up in class actions, but the rule obviously does nothing to solve the problem in other cases. In cases that are not class actions, plaintiff's counsel should be ready to seek voluntary judicial supervision if settlement demands containing fee waivers create conflicts between counsel and clients. *Cf.* Fed.R.Civ.P. 16(a)(5), (c)(7) (use of pretrial conferences to encourage settlement).

one party has agreed to give the other party some benefit, such as relief on the merits, in exchange for a benefit to itself, such as a waiver of fees, a court should be reluctant to enforce the defendant's promise while depriving it of the agreed consideration.[5]

At least in cases such as this one—cases that are not, in my view, appropriate candidates for inclusion in a broad prophylactic rule—we should grant very substantial deference to the district court on these difficult judgment calls. *See Webb v. Board of Education,* —— U.S. ——, ——, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985); *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). We face here a waiver that the district court fairly viewed as agreed, not extorted; a settlement agreement that provided no monetary relief, and indeed provided limited relief of any kind; a class representative fully apprised of her liability under the agreement before she approved it; experienced counsel who approved a compromise that was, from all that appears, a reasonable one; and a district judge who was fully aware of the special dangers involved in a fee waiver, explored the relevant facts in detail, and concluded that the settlement, including the waiver, was fair. In my view, that decision was not an abuse of discretion, and I therefore agree that the judgment of the district court should be affirmed.

---

**5.** In *Lazar v. Pierce,* 757 F.2d 435 (1st Cir.1985), the plaintiff agreed to a settlement waiving attorneys' fees in her civil rights action against her landlord and the United States Department of Housing and Urban Development. The plaintiff subsequently sought to recover fees against the defendant housing authority under 42 U.S.C. § 1988 and against the United States under the Equal Access to Justice Act, 28 U.S.C. § 2412. The court was quite critical of the housing authority, which had insisted upon a fee waiver despite clear liability to the plaintiff, for "playing on counsel's difficult dilemma." *Id.* at 437; *see also id.* at n. 1. Nonetheless, the court refused to award attorneys' fees, in part because of its concern over the "secret plan to rescind" the waiver agreement by plaintiff's counsel. *Id.* at 438; *see also id.* at 437, 439. The court emphasized that rather than surrendering to the housing authority's unfair position, plaintiff's counsel should have resisted settlement or requested help from the court. *See id.* at 438–39.

J. SKELLY WRIGHT, Circuit Judge, dissenting:

In my view, this case presents an increasingly important issue in Title VII settlements: can employers insist on a waiver of fees and costs as a condition for granting class-wide relief?

In the principal opinion,[1] this case does not quite present that question. Rather, the principal opinion rests on a distinction between cases in which plaintiffs voluntarily waive any possible right to fees and costs and cases in which defendants coerce the waiver. Unfortunately, I find this distinction untenable, both generally and in this case. Because I believe that permitting fees and costs to become a bargaining chip in Title VII negotiations undermines the important purposes of statutory fee-shifting, I dissent.

## I.

This case vividly illustrates the illusory nature of the principal opinion's distinction between plaintiff-suggested waiver and defendant-coerced waiver. It is necessary to review the settlement negotiations to understand precisely why this is the case.

The written record of the settlement negotiations consists of two letters from Moore's counsel to NASD's counsel. Since

---

**1.** "Principal opinion" refers to Judge MacKinnon's opinion. In view of the three opinions in this case, there is, of course, no panel opinion. One thing is clear from these opinions, however. This court has a serious "concern that simultaneous negotiation of a settlement on the merits and limitations on attorneys' fees can in some circumstances create serious conflicts." Opinion of Wald, J. at 1111. Indeed, as Judge Wald emphasizes, "the local bar ethics committee has recently ruled that in Title VII actions, a defendant 'may not condition an offer of settlement upon an agreement by plaintiff's counsel to waive or limit the plaintiff's potential statutory [attorneys'] fees.' District of Columbia Bar Legal Ethics Committee, Opinion No. 147, *reprinted in* 113 Daily Washington L.Rep. 389, 389 (1985)." *Id.* Thus it is at least clear that defendant-conditioned waiver of, or limits on, statutory attorneys' fees will not be tolerated.

the question of who initiated what seems to bear heavily in the principal opinion's disposition, it is perhaps significant that, in the first letter, Moore's counsel noted that the letter was in response to "preliminary discussions between [the] lawyers" and "the feeling that [NASD] favors some disposition of this action short of trial." Letter from David Webster to Richard Sampson, April 4, 1983, at 1, *reproduced in* Joint Appendix (JA) at 76–80. Moore's counsel outlined 16 points regarding the merits of a proposed settlement. The points principally addressed recruiting and hiring goals. On the subject of fees and costs Moore's counsel was quite explicit that, in his view, fees and costs should be addressed separately from the merits:

> You will note that I have made no reference to attorneys' fees and expenses as a term of this settlement proposal. I prefer to attempt to resolve the claims of the class and Sharon Moore without reference to such issues. I intend, instead, to submit separately a petition to the Court that will seek fees and costs.  * * *

*Id.* at 4, JA 79. *As NASD's counsel had requested,* Moore's counsel did submit a "ballpark figure on current expenses," *id.;* these expenses (not including attorneys' fees or paralegal costs) amounted to $20,-500. Thus, in the first letter Moore's counsel outlined a settlement on the merits and sought to treat the question of fees and costs separately.

The second letter is also from Moore's counsel to NASD's counsel, this time on May 11. Moore's counsel began by recounting NASD's reaction to the first letter: "Yesterday you told me that the relief requested in our settlement letter of April 4, 1983 was acceptable to your client, *but that fees and expenses created a problem.*" Letter from David Webster to Richard Sampson, May 11, 1983, at 1, *reproduced in* JA 81–82 (emphasis added). Moore's counsel then described three proposals he had made for "dealing with the fees and expenses problem[.]" *Id.* First, he had reiterated the suggestion that they submit the question to the court after the

merits agreement was reached. NASD rejected this suggestion. Second, he had suggested an agreement to cap fees and expenses at $100,000. NASD also rejected this suggestion. And third, he had suggested either limiting fees to $50,000 above expenses, with a total possible exposure of $75,000–$80,000, or splitting the fees NASD's counsel received for the litigation. As with the other two suggestions on fees and expenses, NASD simply rejected the proposal and made no counter-offer.

At this point, Moore's counsel was in a position where NASD's counsel had made absolutely clear that the *merits* proposal was perfectly acceptable, but that NASD would not agree to that merits proposal unless the question of fees and costs were resolved. And, given NASD's flat rejection of all suggestions limiting fees and costs, Moore's counsel quite reasonably concluded that only a waiver of fees and costs would satisfy NASD and permit the merits settlement to go forward. He explained his dilemma in plain language: he did "not wish[ ] to deprive [his] clients of the relief [NASD is] willing to give by considering the question of fees and expenses[.]". *Id.* Moore's counsel thus stated that he would "take in full discharge of any claim for fees and expenses anything that [NASD] is willing to give, and that would include nothing, if that is [NASD's] position." *Id.* at 2, JA 82. NASD soon made clear that "nothing" was indeed its unalterable position.

For the principal opinion this settlement negotiation represents, not a defendant's coercion of a waiver, but a plaintiff's entirely voluntary decision to forego any fees or costs. In my judgment, when a defendant explicitly agrees with a plaintiff's merits proposals but refuses to settle until fees and costs are entirely waived, the distinction between defendant coercion and plaintiff volition is meaningless.

## II.

Since I do not find the principal opinion's distinction tenable, I see the question posed

by this case somewhat differently. For, in my view, it is necessary to consider the use of attorneys' fees as a bargaining chip in Title VII negotiations without the benefit of that distinction.

Simultaneous negotiation of fees and merits in a Title VII case poses a fundamental problem. It pits success on the merits against recovery of fees. The clear policy of Title VII, in contrast, is that the award of attorneys' fees to prevailing parties is an essential element of the statute's important anti-discrimination mission.

### A.

Under Title VII's provision for the award of attorneys' fees to "the prevailing party," 42 U.S.C. § 2000e–5(k) (1982), prevailing plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).[2] The reason for this strong presumption in favor of attorneys' fees is clear: "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Id.* In *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (*en banc*), this court similarly stressed the importance of Title VII's attorneys' fees policy. "The availability of an attorney's fee encourages individuals injured by discrimination to seek judicial redress," *id.* at 889; "[a]n award of fees provides an incentive to competent lawyers to undertake Title VII work only if the award adequately compensates attorneys for the amount of work performed." *Id.* at 890.

Congress has emphasized that the fee-shifting provisions in civil rights statutes are central to its vision of a vigorous anti-discrimination policy. "The effective enforcement of Federal civil rights statutes depends largely on the efforts of private

citizens," H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 1 (1976); "fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which [civil rights statutes] contain." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2 (1976).

Significantly for this appeal, this strong policy favoring attorneys' fees extends to parties who prevail *in settlement* as well as to those who prevail in litigation. "The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). As the Supreme Court noted in *Maher*, the Senate Report accompanying the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, also stressed that the presumption in favor of attorneys' fees extends to settlements: "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No. 94–1011, *supra*, at 5.

Furthermore, this presumption in favor of attorneys' fees extends to a party whose suit acts as a "catalyst" in leading the defendant to anti-discrimination measures. *See, e.g., Foster v. Boorstin*, 561 F.2d 340, 342–343 (D.C.Cir.1977); *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421, 429–430 (8th Cir.1970). Indeed, both the Senate and House Reports to the Civil Rights Attorneys' Fees Awards Act of 1976 cite *Parham*'s analysis of a prevailing party's entitlement to attorneys' fees. *See* H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 7 (1976); S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5 (1976).

Finally, the Supreme Court has emphasized that the extent of a plaintiff's success should determine the amount of attorneys' fees to which he is entitled. "[T]he extent of a plaintiff's success is a crucial factor in

---

**2.** *Piggie Park* was a Title II case, but the Supreme Court has made clear that it applies with equal force to Title VII. *See Albemarle Paper*

*Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975).

determining the proper amount of an award of attorney's fees." *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983). Under this view, success on the merits is not in competition with attorneys' fees; rather, increased success on the merits leads to increased recovery of attorneys' fees as well.

In sum, Congress and the Supreme Court have stressed the important role of fee-shifting in furthering the mission of anti-discrimination statutes. The statutory presumption in granting fees to the prevailing plaintiff includes plaintiffs who prevail in settlement and plaintiffs whose litigation is the catalyst for changes by the defendant. When a plaintiff has achieved partial success, moreover, his recovery should bear a direct relation to the extent of his success.

### B.

Simultaneous negotiation of fees and merits leads to grave problems in two situations: "sacrifice" situations, like the case before us, in which defendants condition settlement on the merits on plaintiff's waiver of fees and costs, and "sweetheart" situations in which class counsel is tempted to agree to reduced class-wide relief in return for generous fee settlements. Both situations are fraught with the potential to undermine the cardinal principle of fee-shifting in civil rights statutes. For, in both situations, rather than reflecting success on the merits, fees are pitted *against* success on the merits.

Recognizing the problems of simultaneous negotiations, at least four circuits have expressed strong disapproval of simultaneous negotiation of fees and merits. The Third Circuit requires that discussion of fees be undertaken only after settlement of the merits. *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir.1977). The Ninth Circuit has established a strong presumption against the propriety of simultaneous negotiations, subject to a showing of "unusual circumstances" that might defeat the presumption. *Jeff D. v. Evans*, 743 F.2d 648 (9th Cir.1984), *petition for*

*cert. granted,* — U.S. —, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985); *Mendoza v. United States*, 623 F.2d 1338 (9th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). The Fifth Circuit has noted that simultaneous negotiation "weigh[s] heavily against the district court's decision to accept the settlement." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 n. 71 (5th Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). And the Eighth Circuit has observed that simultaneous negotiation "may raise a serious ethical concern * * * because · counsel [is] placed in the position of negotiating a fee ultimately destined for his pocket at the same time that all thoughts ought to be singlemindedly focused on the client's interests." *Obin v. Dist. No. 9 of Int'l Ass'n of Mach. & Aerospace Wkrs*, 651 F.2d 574, 582 (8th Cir.1981).

Although many of these cases emerged in a "sweetheart" context, they are equally applicable to a "sacrifice" context. Indeed, the conflict of interest in a sacrifice situation may well be even more troublesome. For the conflict is not between the attorney's duty to his class and his desire for personal gain, but between the attorney's duty to his class and the congressional policy in favor of attorneys' fees for plaintiffs who obtain classwide relief from discrimination. Waiver of fees in a sacrifice situation occurs "at the expense of the goals which Congress sought to achieve when it adopted" the fee-shifting statutes. Calhoun, *Attorney-Client Conflicts of Interest and the Concept of Non-Negotiable Fee Awards under 42 U.S.C. § 1988*, 55 U. CoLo.L.Rev. 341, 381 (1984). Similarly, the "long term effect of persistent demands for the waiver of statutory fees is to prejudice a vital aspect of the administration of justice and undermine efforts to make counsel available to those who cannot afford it." Opinion No. 80–94, Committee on Professional Ethics of the N.Y. Bar Ass'n, *Settlement Offers in Public Interest Litigation Conditioned on Waiver of Statutory Fees* 510 (Sept. 18, 1981). *See also*

*Jeff D. v. Evans, supra,* 743 F.2d at 651–652; *Lisa F. v. Snider,* 561 F.Supp. 724, 726 (N.D.Ind.1983).

Thus, in my view, simultaneous negotiation of fees and merits threatens to undermine the important statutory purposes of fee-shifting. Instead of reflecting success on the merits, the statutory entitlement to fees becomes a bargaining chip in competition with the merits. The chip may be used either to enlarge fees and diminish class-wide relief (the sweetheart situation) or to diminish fees and enlarge class-wide relief (the sacrifice situation). In both cases the congressional purpose in providing the entitlement to fees is warped and distorted.

### C.

In my judgment, this court should join the four circuits that have condemned simultaneous negotiation of fees and merits. We have a responsibility to see that the clear statutory purpose—that fees correspond to success—is realized. In addition, as the other circuits have emphasized, we have a duty to prevent even the appearance of impropriety in the administration of justice. *See, e.g., Obin, supra,* 651 F.2d at 582 n. 10; *Mendoza, supra,* 623 F.2d at 1353 n. 20; *Prandini, supra,* 557 F.2d at 1021.

In particular, this court should hold that simultaneous negotiation of fees and merits is unacceptable, unless unusual circumstances justify such negotiation. The Ninth Circuit has described one such unusual circumstance: the Department of Justice's participation, as an intervenor representing the public interest, in the negotiations. *See Mendoza, supra; Jeff D., supra.* The unusual circumstances that will defeat the presumption should be those that establish a clear reason why the usual problems associated with simultaneous negotiations would not be present. These unusual circumstances should be, of course, the exception, rather than the rule, in Title VII settlements.

This approach addresses the major problems of simultaneous negotiation. It strikes directly at the use of attorneys' fees as a bargaining chip and at the problems of a tradeoff between merits and fees. At the same time, the approach retains some flexibility for those exceptional circumstances in which the ordinary problems associated with simultaneous negotiation are not implicated.[3] Most importantly, it effectuates the statutory purposes of the fee-shifting statutes and responds to the serious ethical concerns identified by four other circuits.

### D.

Under this approach, a court confronted with a simultaneously negotiated settlement that does not reflect unusual circumstances should preserve the settlement on the merits, reject the fees arrangement, and make an entirely independent assessment of fees and costs. In this case, then, I would remand to the District Court, first, to determine whether unusual circumstances justified the simultaneous negotiations, and second, if not, to determine the proper fees and costs, if any, under established principles of fee-shifting.

### III.

This case presents a critical issue for Title VII litigation: whether the statute's important fee-shifting purposes may be undermined by simultaneous negotiation of

---

**3.** I agree with the principal opinion, at 1103–1104, that the footnote in *White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 453–454 n. 15, 102 S.Ct. 1162, 1167–68 n. 15, 71 L.Ed.2d 325 (1982), is inapplicable to sacrifice situations. I also conclude that the Supreme Court's brief rejection of a party's alternative argument, *id.,* does not in any way settle the issue for sweetheart situations. Indeed, in *White* itself the Court emphasized that, at least in the absence of settlement, "the court's decision of entitlement to fees will * * * require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed.'" *Id.* at 451–452, 102 S.Ct. at 1166. Furthermore, *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), decided a year after *White,* establishes a principle for measuring attorneys' fees based on the extent to which plaintiff has prevailed. *Hensley* thus helps a defendant to gauge its total liability.

fees and merits. In my judgment, simultaneous negotiation undermines a primary purpose of Title VII by creating conflicts between the workers, whom the statute seeks to protect, and their lawyers, for whom the statute provides payment by the employer if the lawsuit is successful. I thus believe that this court should join the four other circuits that have expressed strong disapproval of such negotiation.

Finding plaintiff volition, however, the principal opinion limits its analysis to plaintiff-volunteered waivers. Since I find the distinction between plaintiff-volunteered and defendant-coerced waiver untenable, and since I cannot agree with the result that the distinction produces in this case, I respectfully dissent.